```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
BRIAN WILSON, JR.,                                       :
                                                         :
                         Plaintiff,                      :
                                                         :      COMPLAINT
              -against-                                  :
                                                         :
CITY OF NEW YORK, JOHN DOE POLICE                        :
OFFICERS 1 through 3, individually, and JANE             :      Jury Trial Demanded
DOE POLICE OFFICER, individually,                        :
                                                         :
                         Defendants.                     :
-------------------------------------------------------- x
```

This is an action to recover money damages arising out of the violation of Plaintiff Brian Wilson, Jr.'s ("Mr. Wilson") rights under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

2. The Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343.

3. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b) as Plaintiff resides in the District and the claim arose in the District.

## JURY DEMAND

4. Mr. Wilson respectfully demands a trial by jury of all issues in the matter pursuant to Federal Rule of Civil Procedure ("FRCP") 38.

## PARTIES

5. Mr. Wilson is a citizen of the City of New York in Kings County in the State of New York.

6. Defendant City of New York was and is a municipal corporation duly organized

and existing under and by virtue of the laws of the State of New York.

7. Defendant CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the City of New York.

8. That at all times hereinafter mentioned, Defendants John Doe Police Officers 1 through 3 and Jane Doe Police Officer were duly sworn police officers of the NYPD and were acting under the supervision of said department and according to their official duties.

9. That at all times hereinafter mentioned the Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

10. Each and all of the acts of the Individual Defendants alleged herein were committed by said Defendants while acting within the scope of their employment by Defendant City of New York.

## **FACTS**

11. Mr. Wilson at 970A Gates Avenue in Brooklyn.

12. On or about January 27, 2013, Mr. Wilson was walking near his home when John Doe Police Officer 1 and Jane Doe Police Officer detained him without reasonable suspicion or probable cause.

13. From what Mr. Wilson can recollect, John Doe Police Officer 1 was a black male measuring roughly 5 feet 8-10 inches tall.

14. Mr. Wilson believes that he heard Jane Doe Police Officer refer to John Doe Police Officer 1 as Raheem such that Raheem or a name similar in sound to that may be John Doe Police Officer 1's first or last name.

15. From what Mr. Wilson can recollect, Jane Doe Police Officer was a white female with lighter sandy brown hair in a ponytail measuring roughly 5 foot 5-7 inches tall.

16. Jane Doe Police Officer asked Mr. Wilson, in sum and substance, to show her and John Doe Police Officer 1 what he had in his hands.

17. Mr. Wilson asked why he was being stopped. John Doe Police Officer 1 and Jane Doe Police Officer refused to respond and insisted that Mr. Wilson show them his hands.

18. Mr. Wilson had nothing in his hands and John Doe Police Officer 1 and Jane Doe Police Officer eventually released him.

19. The next evening, January 28, 2013, at approximately 8:00 p.m., Mr. Wilson was walking on Gates Avenue in Brooklyn between Ralph Avenue and Patchen Avenue when Jane Doe Police Officer and John Doe Police Officer 1 again stopped him and arrested him with little initial conversation or interaction.

20. In effecting the arrest, John Doe Police Officer 1 grabbed Mr. Wilson's arm and pulled it behind Mr. Wilson's back then up in an unnatural position which caused Mr. Wilson to exclaim in great pain.

21. Mr. Wilson pleaded for John Doe Police Officer 1 to release his arm from that position due to the overextension of his shoulder muscle and related pain. John Doe Police Officer 1 ignored Mr. Wilson's pleas.

22. While continuing to hold Mr. Wilson's arm in that unnatural and painful position, John Doe Police Officer 1 then grabbed Mr. Wilson roughly by the hood of his sweatshirt so that

the fabric constricted tightly around Mr. Wilson's neck to choke him and cause him great fear. John Doe Police Officer 1 proceeded to drag Mr. Wilson to a police vehicle.

23. Two other police officers—John Doe Police Officers 2 and 3—had arrived on the scene and John Doe Police Officer 1 and John Doe Police Officer 2 both got into the back seat of the police vehicle with Mr. Wilson.

24. From what Mr. Wilson can recollect, John Doe Police Officer 2 was a black male measuring over 6 feet in height. Mr. Wilson cannot recollect any of John Doe Police Officer 3's identifying physical characteristics.

25. In the backseat of the police vehicle and en route to the 81st precinct, John Doe Police Officer 2 now grabbed the fabric of Mr. Wilson's hood from John Doe Police Officer 1 and John Doe Police Officer 2 continued to twist it so that it remained constricted tightly around Mr. Wilson's neck.

26. Although Doe Officers would not answer Mr. Wilson when Mr. Wilson asked why he had been arrested, Mr. Wilson heard one of the Doe Officers state that Mr. Wilson had been arrested for disorderly conduct.

27. Plaintiff's arrest number was K13613517.

28. Mr. Wilson spent nearly twenty-four hours in custody before the Kings County District Attorney's Office declined to bring charges against him and he was released.

29. Because Mr. Wilson was taken to the 81st Precinct after his arrest, on information and belief, John Doe Police Officers 1 through 3 and Jane Doe Police Officer were at the time stationed at the 81st Precinct and could potentially be identified through consultation of precinct employment records and Mr. Wilson's arrest report.

30. Mr. Wilson continued to experience a sore arm for some time after the wrongful arrest and John Doe Police Officer 1's use of excessive force upon him, with the soreness

centering in his shoulder where John Doe Police Officer 1's pulling had caused the greatest strain upon Mr. Wilson.

31. John Doe Police Officer 1 caused Mr. Wilson's strained shoulder muscle when he pulled Mr. Wilson's arm into an unnatural position and refused to shift it to a reasonable position.

32. Mr. Wilson suffered damages as a result of Defendants' violation of his constitutional rights including deprivation of liberty, loss of wages, emotional traums and more.

33. Mr. Wilson suffered physical pain and fear as a result of the arm injury he suffered as a result of John Doe Police Officer 1's unreasonable twisting of Mr. Wilson's arm and as a result of John Doe Police Officer 1 and John Doe Police Officer 2's use of Mr. Wilson's hood as a choke collar by which to restrain him and lead him about.

34. Defendants unconstitutionally deprived Mr. Wilson of his liberty, caused him physical liberty, damaged his reputation, caused him emotional distress and fear that manifested in physical ailments and more.

35. All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its employees, and due to a custom, policy and/or practice of: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting those individuals.

36. The aforesaid incident is not an isolated incident. The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar

wrongful conduct as documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York as well as in New York State courts. As a result, Defendant City of New York is aware (from said lawsuits as well as notices of claims and complaints filed with the NYPD's Internal Affairs Bureau and the CCRB) that many NYPD officers, including the Individual Defendants, arrest individual persons in order to meet productivity goals and arrest quotas; arrest individuals for professional advancement, overtime compensation and/or other objectives outside the ends of justice; and/or falsely arrest individuals and engage in a practice of falsification of evidence in an attempt to justify the false arrest.

37. The Honorable Jack B. Weinstein, United States District Judge for the Eastern District of New York, has written that

> [i]nformal inquiry by the [C]ourt and among judges of this [C]ourt, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the [NYPD] . . . [T]here is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the [C]ity approving illegal conduct of the kind now charged.

Colon v. City of N.Y., No. 09 Civ. 8, No. 09 Civ. 9 (JBW), 2009 WL 4263363, at *2 (E.D.N.Y. Nov. 25, 2009).

38. Former Deputy Commissioner Paul J. Browne, as reported in the press on January 20, 2006, stated that NYPD commanders are permitted to set "productivity goals," permitting an inference of such a custom or policy encouraging deprivations of individuals' constitutional rights in cases such as this one.

39. Defendant City of New York is thus aware that its improper training and customs and policies have often resulted in a deprivation of individuals' constitutional rights. Despite such notice, Defendant City of New York has failed to take corrective action. This failure caused Individual Defendants in this case to violate Mr. Wilson's constitutional rights.

6

40. Moreover, on information and belief, Defendant City of New York was aware, prior to the incident, that the Individual Defendants lacked the objectivity, temperament, maturity, discretion and disposition to be employed as police officers. Despite such notice, Defendant City of New York has retained these officers, and failed to adequately train and supervise them.

41. All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

42. All of the aforementioned acts deprived Mr. Wilson of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983.

43. The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

44. The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures and the rules of the Defendant City of New York and the NYPD, all under the supervision of ranking officers of said department.

45. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

46. As a result of the foregoing, Mr. Wilson is entitled to compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**FIRST CLAIM**
**42 U.S.C. § 1983**

47. Mr. Wilson repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

48. Defendants, by their conduct toward Mr. Wilson alleged herein, violated Mr. Wilson's rights guaranteed by 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the Constitution of the United States.

49. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly with malice and with the specific intent to deprive Mr. Wilson of his constitututional rights.

50. As a direct and proximate result of Defendants' unlawful conduct, Mr. Wilson sustained the damages hereinbefore alleged.

## SECOND CLAIM
## UNLAWFUL STOP AND FALSE ARREST

51. Mr. Wilson repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

52. Defendants violated the Fourth and Fourteenth Amendments because they detained and arrested Mr. Wilson without reasonable suspicion or probable cause.

53. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr. Wilson of his constitutional rights.

54. As a direct and proximate result of Defendants' unlawful conduct, Mr. Wilson sustained the damages hereinbefore alleged.

## THIRD CLAIM
## EXCESSIVE FORCE

55. Mr. Wilson repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

56. The level of force employed by Individual Defendants and, in particular, Defendant Doe Sergeant, was excessive, objectively unreasonable and otherwise in violation of Mr. Wilson's Fourth Amendment and Fourteenth Amendment rights.

57. As a direct and proximate result of Defendants' unlawful conduct, Mr. Wilson was subjected to excessive force and sustained the injuries hereinbefore alleged.

## FOURTH CLAIM
## FAILURE TO INTERVENE

58. Mr. Wilson repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

59. The Individual Defendants actively participated in the aforementioned unlawful conduct and observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

60. Accordingly, the Individual Defendants who failed to intervene violated the Fourth and Fourteenth Amendments of the United States Constitution.

61. Individual Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr. Wilson of his constitutional rights.

62. As a direct and proximate result of Defendants' unlawful conduct, Mr. Wilson sustained the damages hereinbefore alleged.

## FIFTH CLAIM
## MONELL

63. Mr. Wilson repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

64. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

65. The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to, the inadequate screening, hiring, retaining, training and supervising of its employees that was the moving force behind the violation of Mr. Wilson's rights as described herein. As a result of the failure of the Defendant City of New York to properly recruit, screen, train, discipline and supervise its officers, including the Individual Defendants, Defendant City of New York has tacitly authorized, ratified and has been deliberately indifferent to, the acts and conduct complained of herein.

66. The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

67. The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City of New York and the NYPD constituted deliberate indifference to Mr. Wilson's safety, well-being and constitutional rights.

68. The foregoing customs, polices, usages, practices, procedures and rules of Defendant City of New York and the NYPD were the direct and proximate cause of the constitutional violations suffered by Mr. Wilson as described herein.

**PRAYER FOR RELIEF WHEREFORE**, Mr. Wilson respectfully request the following relief:

A. An order entering judgment for Mr. Wilson against Defendants on each of their claims for relief;

B. Awards to Mr. Wilson for compensatory damages against all Defendants, jointly and severally, for their violation of Mr. Wilson's Fourth and Fourteenth Amendment rights, the amount to be determined at jury trial, which Mr. Wilson respectfully demands pursuant to FRCP 38;

C. Awards to Mr. Wilson of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to Mr. Wilson's constitutional rights and welfare, the amount to be determined at jury trial, which Mr. Wilson respectfully demands pursuant to FRCP 38;

D. Awards to Mr. Wilson of the costs of this action, including reasonable attorneys' fees;

E. Such further relief as this Court deems just and proper.

DATED: January 24, 2016
New York, New York

/s
Ryan Lozar  (RL0229)
305 Broadway, 9th Floor
New York, New York 10007
(310) 867-1562

*Attorney for Plaintiff*

,