UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
BRIAN WILSON,

       Plaintiff,

   -against-

CITY OF NEW YORK, NYPD OFFICER S. ABDUL-RAHMAAN, individually, NYPD OFFICER MALERIE TREUMAN, individually, NYPD OFFICER FRANKIE JOSEPH, individually, NYPD OFFICER JOEL EDOUARD, individually, and NYPD LIEUTENANT SILAS PLUNKETT, individually,

       Defendants.
-----------------------------------------------------------x

FIRST AMENDED COMPLAINT

Jury Trial Demanded
No. 16 Civ. 373 (FB) (RLM)

  This is an action to recover money damages arising out of the violation of Plaintiff Brian Wilson, Jr.'s ("Mr. Wilson") rights under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

  1. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

  2. The Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343.

  3. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b) as Plaintiff resides in the District and the claim arose in the District.

## JURY DEMAND

  4. Mr. Wilson respectfully demands a trial by jury of all issues in the matter pursuant to Federal Rule of Civil Procedure ("FRCP") 38.

## PARTIES

  5. Mr. Wilson is a citizen of the City of New York in Kings County in the State of

New York.

6. Defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

7. Defendant CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the City of New York.

8. That at all times hereinafter mentioned, Defendants NYPD Officers S. Abdul-Rahmaan, Malerie Treuman, Frankie Joseph, Joel Edouard and NYPD Lieutenant Silas Plunkett were duly sworn police officers of the NYPD and were acting under the supervision of said department and according to their official duties.

9. That at all times hereinafter mentioned the Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

10. Each and all of the acts of the Individual Defendants alleged herein were committed by said Defendants while acting within the scope of their employment by Defendant City of New York.

## FACTS

**Brief Introduction**

11. In January and February 2013, Mr. Wilson was arrested three times near his homw at 970A Gates Avenue in Brooklyn. On the first occasion—January 17, 2013—Mr. Wilson was arrested for disorderly conduct and possessed no marijuana. On the second and third

occasions—January 27, 2013 and February 13, 2013, respectively—Mr. Wilson was arrested for possessing a marijuana cigarette.

12. Although this action alleges false arrest and excessive force claims relating to the January 17, 2013 disorderly conduct arrest, the January 27, 2013 and February 13, 2013 arrests are relevant to Mr. Wilson's claim that this action is timely, as discussed below.

**Facts Relating To Mr. Wilson's January 17, 2013 Disorderly Conduct Arrest And The Misrepresentations Made To Him And To Others About The Nature Of That Arrest**

13. On or about January 17, 2013, Mr. Wilson was walking near his home at 970A Gates Avenue when Defendant Abdul-Rahmaan and Defendant Treuman detained him without reasonable suspicion or probable cause.

14. Mr. Wilson asked why he was being stopped. Defendant Abdul-Rahmaan and Defendant Treuman refused to respond and insisted that Mr. Wilson show them his hands.

15. Mr. Wilson showed Defendant Abdul-Rahmaan and Defendant Treuman his hands, which had nothing in them.

16. As Mr. Wilson showed Defendant Abdul-Rahmaan and Defendant Treuman his hands, he said, in sum and substance, that he believed that their stop was unconstitutional because he had done nothing suspicious and was just walking on the sidewalk.

17. Defendant Abdul-Rahmaan and Defendant Treuman left.

18. Some time later, Mr. Wilson was again walking near his home on Gates Avenue when Defendant Abdul-Rahmaan and Defendant Treuman again stopped him.

19. This time, Defendant Abdul-Rahmaan and Defendant Treuman arrested Mr. Wilson with little to no preamble.

20. In effecting the arrest, Defendant Abdul-Rahmaan grabbed Mr. Wilson's arm and pulled it behind Mr. Wilson's back then up in an unnatural position which caused Mr. Wilson to exclaim in great pain.

21.     Mr. Wilson pleaded for Defendant Abdul-Rahmaan to release his arm from that position due to the overextension of his shoulder muscle and related pain. Defendant Abdul-Rahmaan ignored Mr. Wilson's pleas.

22.     While continuing to hold Mr. Wilson's arm in that unnatural and painful position, Defendant Abdul-Rahmaan then grabbed Mr. Wilson roughly by the hood of his sweatshirt so that the fabric constricted tightly around Mr. Wilson's neck to choke him and cause him great fear. Defendant Abdul-Rahmaan proceeded to drag Mr. Wilson to a police vehicle.

23.     At least one other police officer—on information and belief, Defendant Plunkett—had arrived on the scene and Defendant Abdul-Rahmaan and Defendant Plunkett both got into the back seat of the police vehicle with Mr. Wilson.

24.     In the backseat of the police vehicle and en route to the 81st precinct, Defendant Plunkett now grabbed the fabric of Mr. Wilson's hood from Defendant Abdul-Rahmaan and Defendant Plunkett continued to twist it so that it remained constricted tightly around Mr. Wilson's neck.

25.     Although Defendants initially would not answer Mr. Wilson when Mr. Wilson asked why he had been arrested (Mr. Wilson had asked this question since the moment he was arrested), one of the Individual Defendants eventually told Mr. Wilson that they had arrested Mr. Wilson for disorderly conduct.

26.     On information and belief, Defendants arrested Mr. Wilson for disorderly conduct due to his comments to Defendant Abdul-Rahmaan and Defendant Treuman that their suspicion-less stop of him on the sidewalk and demand that he show them his hands was unconstitutional.

27.     Unbeknownst to Mr. Wilson, despite the fact that Individual Defendants told him that they had arrested him for disorderly conduct, Individual Defendants instead told a different story on police paperwork and to the District Attorney's Office, which was that Defendant

Joseph and Defendant Edouard had observed Mr. Wilson in a street narcotic sale. This was not true. Either Defendant Joseph and Defendant Edouard colluded with the other Individual Defendants to permit them to make this false statement, or Defendant Joseph and Defendant Edouard did not know that the other Individual Defendants had attributed these allegations of Mr. Wilson's involvement in a drug sale to them.

28. On information and belief, the Individual Defendants involved in Mr. Wilson's arrest fabricated a different reason for Mr. Wilson's arrest after their belated realization that Mr. Wilson's speech about the unconstitutionality of the stop did not constitute disorderly conduct such that Mr. Wilson would be able to successfully object to and/or defeat an arrest on that basis.

29. A phony disorderly conduct charge is much more vulnerable to challenge than a phony marijuana-joint-possession charge insofar as the former charge punishes an individual's disruptive behavior of a public rather than individual dimension, and Defendants here could point to no such public disruption.

30. Mr. Wilson spent nearly twenty-four hours in custody before the Kings County District Attorney's Office declined to bring charges against him on the false marijuana allegations and Mr. Wilson was released.

31. All throughout Mr. Wilson's twenty-four-hour incarceration, he never knew that Individual Defendants had processed him as a marijuana-offense arrest because he did not have marijuana on his person when he was arrested.

32. All throughout Mr. Wilson's twenty-four-hour incarceration, he never knew that Individual Defendants had processed him as a marijuana-offense arrest because Defendants explicitly told him that they arrested him for disorderly conduct.

33. All throughout Mr. Wilson's twenty-four-hour incarceration, he never knew that Individual Defendants had processed him as a marijuana-offense arrest because the D.A.'s

5

decline-to-prosecute decision meant that Mr. Wilson never spoke to an attorney who, upon looking at Defendants' submissions to the D.A., would have been able to impart that fact to Mr. Wilson.

34. Of course, the converse was also true—as a result of Individual Defendants' decision to unlawfully falsely report Mr. Wilson's arrest as a marijuana offense, no one else who ever reviewed records relating to Mr. Wilson's January 17, 2013 arrest—for example, the clerk whose help Mr. Wilson sought in identifying the date of the disorderly-conduct offense—could ever know that his arrest that day had actually been a disorderly-conduct arrest founded upon Individual Defendants taking offense at Mr. Wilson's remarks about the unconstitutionality of their suspicionless stop and search.

35. Mr. Wilson continued to experience a sore arm for some time after the wrongful arrest and Defendant Abdul-Rahaam's use of excessive force upon him, with the soreness centering in his shoulder where Defendant Abdul-Rahaam's pulling had caused the greatest strain upon Mr. Wilson.

36. Defendant Abdul-Rahaam caused Mr. Wilson's strained shoulder muscle when he pulled Mr. Wilson's arm into an unnatural position and refused to shift it to a reasonable position.

37. Mr. Wilson suffered damages as a result of Defendants' violation of his constitutional rights including deprivation of liberty, loss of wages, emotional traums and more.

38. Mr. Wilson suffered physical pain and fear as a result of the arm injury he suffered as a result of Defendant Abdul-Rahaam's unreasonable twisting of Mr. Wilson's arm and as a result of Defendant Abdul-Rahaam's and Defendant Plunkett's use of Mr. Wilson's hood as a choke collar by which to restrain him and lead him about.

39. Defendants unconstitutionally deprived Mr. Wilson of his liberty, caused him physical liberty, damaged his reputation, caused him emotional distress and fear that manifested in physical ailments, deprived him of the ability to seek judicial redress for damages relating to these injuries, and more.

**The Consequences Of Defendants' Misrepresentations On Police Paperwork And To The D.A. About The Nature Of Mr. Wilson's January 13, 2013 Arrest**

40. In 2015, Mr. Wilson decided that he would like to pursue a civil rights claim relating to his disorderly-conduct arrest and learned there was a three-year statute of limitations.

41. Mr. Wilson could not remember the precise date of his disorderly-conduct arrest. He could only remember that the arrest occurred at some point in January or February 2013.

42. In or around the final months of 2015, Mr. Wilson went to the Kings County Criminal Court Records Office to learn the precise date of his disorderly-conduct arrest so that he would not fail to comply with the three-year statute of limitations on related civil rights claims.

43. Mr. Wilson went to the Records Office first thing in the morning on the day of his visit.

44. Mr. Wilson told the clerk behind the window that he wanted information relating to his early 2013 disorderly-conduct arrest.

45. The clerk left and returned and expressed confusion about what Mr. Wilson wanted.

46. Mr. Wilson clarified that he wanted the clerk to look for the arrest date relating to his early 2013 disorderly-conduct arrest.

47. In response to Mr. Wilson's clarification that he only wished to have the arrest date for the disorderly-conduct arrest, the clerk left, returned and gave Mr. Wilson a sheet of paper titled "Undocketed Arrest Status Report."

7

48. The "Undocketed Arrest Status Report" is a document the records office uses to communicate arrest information as it pertains to a decline-to-prosecute arrest.

49. On the "Undocketed Arrest Status Report" that the clerk gave Mr. Wilson in response to his inquiry about the disorderly-conduct arrest, the clerk wrote "Arrest No. K13613517" and "Arrest Date 1/28/2013."

50. On January 23, 2016, within three years of January 28, 2016, Mr. Wilson filed a civil rights action alleging false arrest and excessive force in connection with the disorderly-conduct arrest. In Mr. Wilson's complaint, he described in detail the physical characteristics of the John and Jane Doe Officers who arrested him for disorderly conduct after he challenged the constitutionality of their actions, and Mr. Wilson recalled that one of the John Doe Officers had a name which sounded like Rakeem; and more.

51. Also on January 23, 2016, Mr. Wilson filed a motion with this Court for an Order directing the City to show cause why it should not name the John and Jane Doe Defendants involved in the disorderly-conduct arrest on or before January 28, 2016.

52. The City mooted Mr. Wilson's order and voluntarily provided the information relating to Mr. Wilson's January 28, 2016 arrest and Mr. Wilson's Arrest No. K13613517.

53. It was at this moment that the Parties learned for the first time that although the records office provided Mr. Wilson with the arrest date and arrest number corresponding to Mr. Wilson's disorderly-conduct arrest, the records office had in fact provided Mr. Wilson with no information that corresponded to the disorderly-conduct arrest at all.

54. In fact, it was at this moment that the Parties learned for the first time that the records office had provided Mr. Wilson with the arrest date for one marijuana-joint-possession arrest and the arrest number for a totally different marijuana-joint-possession arrest.

8

55. Finally, it was as a result of these discoveries that the Parties learned for the first time that Mr. Wilson's disorderly-conduct arrest occurred on January 17, 2013, meaning that Mr. Wilson, in relying upon the government's representation to him about the date of the disorderly-conduct arrest, has missed the relevant statute of limitations by six days.

56. As a result of the Individual Defendants' misrepresentations about the nature of Mr. Wilson's 2013 disorderly-conduct arrest as described herein, Mr. Wilson could have made no inquiry in 2015 for government records which would have permitted a third-pary records custodian to identify Mr. Wilson's disorderly-conduct arrest records and produce relevant information to him.

57. As a result of Individual Defendants' misrepresentations on police paperwork and in submissions to the D.A.'s officer regarding Mr. Wilson's disorderly-conduct arrest, Individual Defendants effectively thwarted Mr. Wilson's 2015 demonstrated due diligence to meet the statute of limitations relating to civil rights claims arising from his disorderly-conduct arrest.

58. To the extent that Defendants will move to dismiss Mr. Wilson's Amended Complaint on statute of limitations grounds, the facts as herein described entitle Mr. Wilson to ask the Court to equitably estop such a defense.

59. All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its employees, and due to a custom, policy and/or practice of: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting those individuals.

60. The aforesaid incident is not an isolated incident. The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct as documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York as well as in New York State courts. As a result, Defendant City of New York is aware (from said lawsuits as well as notices of claims and complaints filed with the NYPD's Internal Affairs Bureau and the CCRB) that many NYPD officers, including the Individual Defendants, arrest individual persons in order to meet productivity goals and arrest quotas; arrest individuals for professional advancement, overtime compensation and/or other objectives outside the ends of justice; and/or falsely arrest individuals and engage in a practice of falsification of evidence in an attempt to justify the false arrest.

61. The Honorable Jack B. Weinstein, United States District Judge for the Eastern District of New York, has written that

> [i]nformal inquiry by the [C]ourt and among judges of this [C]ourt, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the [NYPD] . . . [T]here is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the [C]ity approving illegal conduct of the kind now charged.

Colon v. City of N.Y., No. 09 Civ. 8, No. 09 Civ. 9 (JBW), 2009 WL 4263363, at *2 (E.D.N.Y. Nov. 25, 2009).

62. Former Deputy Commissioner Paul J. Browne, as reported in the press on January 20, 2006, stated that NYPD commanders are permitted to set "productivity goals," permitting an inference of such a custom or policy encouraging deprivations of individuals' constitutional rights in cases such as this one.

63. Defendant City of New York is thus aware that its improper training and customs and policies have often resulted in a deprivation of individuals' constitutional rights. Despite

such notice, Defendant City of New York has failed to take corrective action. This failure caused Individual Defendants in this case to violate Mr. Wilson's constitutional rights.

64. Moreover, on information and belief, Defendant City of New York was aware, prior to the incident, that the Individual Defendants lacked the objectivity, temperament, maturity, discretion and disposition to be employed as police officers. Despite such notice, Defendant City of New York has retained these officers, and failed to adequately train and supervise them.

65. All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

66. All of the aforementioned acts deprived Mr. Wilson of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983.

67. The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

68. The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures and the rules of the Defendant City of New York and the NYPD, all under the supervision of ranking officers of said department.

69. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

70. As a result of the foregoing, Mr. Wilson is entitled to compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## FIRST CLAIM
## 42 U.S.C. § 1983

71. Mr. Wilson repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

72. Defendants, by their conduct toward Mr. Wilson alleged herein, violated Mr. Wilson's rights guaranteed by 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

73. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly with malice and with the specific intent to deprive Mr. Wilson of his constitututional rights.

74. As a direct and proximate result of Defendants' unlawful conduct, Mr. Wilson sustained the damages hereinbefore alleged.

## SECOND CLAIM
## UNLAWFUL STOP, FALSE ARREST

75. Mr. Wilson repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

76. Defendants violated the Fourth and Fourteenth Amendments because they detained and arrested Mr. Wilson without reasonable suspicion or probable cause and fabricated evidence against him.

77. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr. Wilson of his constitutional rights.

78.     As a direct and proximate result of Defendants' unlawful conduct, Mr. Wilson sustained the damages hereinbefore alleged.

## THIRD CLAIM
## PROCEDURAL DUE PROCESS

79.     Mr. Wilson repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

80.     Defendants' unlawful actions as described herein deprived Mr. Wilson of a liberty and property interest.

81.     Defendants' unlawful actions deprived Mr. Wilson of his liberty and property interest by virtue of constitutionally inadequate procedural safeguards insofar as Mr. Wilson was not provided with notice reasonably calculated, under the circumstances, to apprise him of the claimed nature of his arrest and to afford him an opportunity to present his objections.

82.     Defendants could have, but did not, use a different process pursuant to which Mr. Wilson received paperwork informing him of the manner in which his arrest was falsely recorded, and he suffered an erroneous deprivation of his liberty and property interest as a result.

83.     Had Defendants employed a different process which afforded Mr. Wilson even the most basic information regarding the manner in which his arrest was falsely recorded at the time of his arrest, that different process would have imposed upon them little to no fiscal and administrative burden.

84.     As a direct and proximate result of Defendants' unlawful conduct, Mr. Wilson suffered damages for which there is no post-deprivation remedy.

85.     Defendants' interest in failing to provide, or at least show, an arrestee the paperwork relating to the arrest at the time of the arrest, to the extent that such an interest exists, does not outweigh Mr. Wilson's countervailing interests.

## FOURTH CLAIM
## MALICIOUS ABUSE OF PROCESS

86. Mr. Wilson repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

87. Among other things, Defendants' actions constitute the use of regular legal process—the completion of Mr. Wilson's arrest paperwork.

88. Defendants' actions as herein described demonstrate their intent to do Mr. Wilson harm without any excuse or justification.

89. Defendants did this in order to achieve a collateral objective outside of the normal legitimate ends of the process, which was to dissimulate the real facts underpinning Mr. Wilson's arrest and substitute in their place facts which Defendants thought would complicate Mr. Wilson's ability to successfully object to the arrest criminally or civilly.

90. As a direct and proximate result of Defendants' unlawful conduct, Mr. Wilson sustained the damages herein described.

## FIFTH CLAIM
## EXCESSIVE FORCE

91. Mr. Wilson repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

92. The level of force employed by Individual Defendants and, in particular, Defendant Doe Sergeant, was excessive, objectively unreasonable and otherwise in violation of Mr. Wilson's Fourth Amendment, Fifth Amendment and Fourteenth Amendment rights.

93. As a direct and proximate result of Defendants' unlawful conduct, Mr. Wilson was subjected to excessive force and sustained the injuries hereinbefore alleged.

## SIXTH CLAIM
## FAILURE TO INTERVENE

94. Mr. Wilson repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

95. The Individual Defendants actively participated in the aforementioned unlawful conduct and observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

96. Accordingly, the Individual Defendants who failed to intervene violated the Fourth and Fourteenth Amendments of the United States Constitution.

97. Individual Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr. Wilson of his constitutional rights.

98. As a direct and proximate result of Defendants' unlawful conduct, Mr. Wilson sustained the damages hereinbefore alleged.

## SEVENTH CLAIM
## MONELL

99. Mr. Wilson repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

100. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

101. The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to, the inadequate screening, hiring, retaining, training and supervising of its employees that was the moving force behind the violation of Mr. Wilson's rights as described herein. As a result of the failure of the

Defendant City of New York to properly recruit, screen, train, discipline and supervise its officers, including the Individual Defendants, Defendant City of New York has tacitly authorized, ratified and has been deliberately indifferent to, the acts and conduct complained of herein.

102.	The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

103.	The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City of New York and the NYPD constituted deliberate indifference to Mr. Wilson's safety, well-being and constitutional rights.

104.	The foregoing customs, polices, usages, practices, procedures and rules of Defendant City of New York and the NYPD were the direct and proximate cause of the constitutional violations suffered by Mr. Wilson as described herein.

**PRAYER FOR RELIEF WHEREFORE**, Mr. Wilson respectfully request the following relief:

A. An order entering judgment for Mr. Wilson against Defendants on each of their claims for relief;

B. Awards to Mr. Wilson for compensatory damages against all Defendants, jointly and severally, for their violation of Mr. Wilson's Fourth and Fourteenth Amendment rights, the amount to be determined at jury trial, which Mr. Wilson respectfully demands pursuant to FRCP 38;

C. Awards to Mr. Wilson of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to Mr. Wilson's constitutional rights and welfare, the amount to be determined at jury trial, which Mr. Wilson respectfully demands pursuant to FRCP 38;

D. Awards to Mr. Wilson of the costs of this action, including reasonable attorneys' fees;

E. Such further relief as this Court deems just and proper.

DATED:    April 1, 2016
          New York, New York

                                        /s/
                                        Ryan Lozar  (RL0229)
                                        305 Broadway, 9th Floor
                                        New York, New York 10007
                                        (310) 867-1562

                                        *Attorney for Plaintiff*

,